```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
RICHARD A. VARGUS,            :
                              :
            Plaintiff,        :
                              :
    -against-                 :   REPORT AND RECOMMENDATION
                              :   04 Civ. 3870 (CLB)(MDF)
NORMAN MINETTA, Secretary,    :
Department of Transportation, :
                              :
            Defendant.        :
                              :
------------------------------X
```

TO: THE HONORABLE CHARLES L. BRIEANT, U.S.D.J.

In May 2004, Richard Vargus, proceeding *pro se*, commenced this action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.*, ("ADEA") against Norman Minetta, the Secretary of the United States Department of Transportation (the "Secretary"), and Eileen Connolly and Raymond Whalen, his supervisors at the FAA, asserting claims of gender, race, and age discrimination. Currently pending is the Secretary's motion to dismiss Vargus's complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, it is respectfully recommended that the Secretary's motion be granted and Vargus's complaint be dismissed.

1

**Background**

In his complaint, Vargus, a Hispanic male who, during the relevant time period, was 47 years old and a Civil Aviation Security Specialist, Operations Officer with the Federal Aviation Administration ("FAA"), asserts that, during his tenure at the FAA, he suffered discrimination on the basis of his age, gender, and race. While his complaint is rambling and somewhat incoherent, Vargus's claims appear to concern the manner in which the FAA and, specifically, his supervisors handled two incidents where he was disciplined for his conduct toward other employees. Vargus attached numerous documents to his complaint, including the two complaints he filed with the Department of Transportation (the "DOT") and portions of the agency decisions. The following procedural history is derived from these documents.

**Agency Proceedings**

In August 2001, Vargus filed a formal complaint with the DOT, in which he asserted claims of gender, age, and race discrimination and retaliation for having filed previous complaints. *See* Decl. of Melanie R. Hallums at Ex. A (August 2001 complaint).[1] Vargus explained that, in January 2001, his supervisor, Eileen Connolly, and his manager, Raymond Whalen,

---

[1] Although the documents to which I cite can be found among the many exhibits attached to Vargus's complaint, for ease of reference, I have cited to the copies of the documents submitted by the Secretary in support of his motion to dismiss.

2

informed him that he was being charged with three violations of the FAA conduct and discipline regulations based on allegations of Paula Porcello, one of Vargus's female co-workers, that, in October 2000, he had inappropriately touched her, stalked her in the building, and made harassing phone calls to her at and away from work. *See id*. After an investigation, Vargus was suspended for five days. *See id*. Vargus claimed that: (1) he was improperly disciplined for this incident because Porcello did not timely assert her complaint; (2) the Eastern Region Civil Aviation Security Division (the "Eastern Region Security Division"), the FAA division for which he worked, disciplined him because he had previously filed complaints against Connolly and Whalen in December 2000 and had made recommendations to management as to how to improve the internal operations; and (3) there was not sufficient evidence that he had violated any FAA regulations. *See id*. Vargus further alleged that the discriminatory animus of the Eastern Region Security Division in disciplining him was evidenced by the fact that, although she had made false accusations against him, Porcello was not disciplined. *See id*.

In December 2001, Vargus filed another complaint with the DOT, alleging that he was discriminated against on the basis of his age, gender, national origin, and race and in retaliation for having filed previous complaints when the management required him

to complete his suspension rather than return to work on the day after the September 11, 2001 terrorist attack in New York City and complete his suspension in one-day increments. *See id*. at Ex. B (December 2001 complaint). Vargus further claimed that the management intimidated him and tried to coerce him into withdrawing his previously filed formal complaint. *See id*.

The DOT consolidated Vargus's two complaints and issued a final decision in November 2002. *See id*. at Ex. C (Final Agency Decision). With respect to the claims raised in Vargus's August 2001 complaint, the DOT concluded that Vargus failed to state a *prima facie* case of age or sex discrimination because he did not establish that similarly situated persons outside of his protected groups were not suspended for the same offense. *See id*. at Ex. C, p. 11. Next, the DOT held that Vargus had established a *prima facie* case of reprisal, finding that "he filed an informal EEO complaint in February 2001 that was settled in March 2001; the involved management officials were aware of that activity; and he received a notice of suspension in July 2001, approximately four to five months after the protected EEO activity." *Id*. It further held that the FAA had met its burden of producing a legitimate, non-discriminatory reason for suspending Vargus by demonstrating that, after a thorough investigation, the Accountability Board found that Vargus had inappropriately touched Ms. Porcello and that the five-day

suspension was an appropriate penalty for a first time offense. *See id*. Finally, the DOT found that Vargus failed to show that the FAA's articulated reasons were a pretext for discrimination and, therefore, concluded that Vargus did not meet his burden of proving that his suspension was an act of reprisal. *See id*.

As for Vargus's second complaint, the DOT first found that Vargus failed to establish a *prima facie* case of national origin, sex, and age discrimination because he could not show that similarly situated employees outside of his protected groups were permitted to take their suspensions in one-day increments. *See id*. at Ex. C, p. 12. The DOT next found that Vargus established a *prima facie* case of reprisal and that the FAA met its burden of producing a legitimate, non-discriminatory reason for not allowing Vargus to take his suspension in one-day increments when he would not withdraw his prior EEO complaint. *See id*. However, the DOT found that Vargus offered no rebuttal evidence to show that management's articulated reasons lacked credibility or were otherwise erroneous. *See id*. Accordingly, the DOT concluded that Vargus failed to establish that his suspension and the FAA's refusal to permit him to serve the suspension in one-day increments was based on his gender, national origin, or age or in retaliation for having filed earlier complaints. *See id*. at Ex. C, p. 13.

Vargus subsequently appealed the DOT's decision to the Equal

Employment Opportunity Commission, Office of Federal Operations ("OFO") and, in a June 6, 2003 decision, the OFO affirmed the DOT's decision. *See id.* at Ex. D (OFO Decision). At the end of its decision, the OFO advised Vargus that he was required to file any request for reconsideration with the OFO within 30 days of receipt of the decision and that, if he wished to bring a civil action, he must do so within 90 days of receipt of the decision. *See id.* On February 5, 2004, Vargus submitted a request for reconsideration to the OFO. *See id.* at Ex. E (Request for Reconsideration). In a February 19, 2004 decision, the OFO dismissed Vargus's request as untimely. *See id.* at Ex. F (Dismissal of Request for Reconsideration). The OFO stated that "[t]he decision in EEOC Appeal No. 01A31561 remains the Commission's final decision." *Id.*

**Proceedings in this Court**

On May 21, 2004, Vargus filed the original complaint in this Court. In the body of his complaint, which only numbers two pages in length, Vargus alleges that the FAA engaged in "a pattern of harassment against [him], which commenced in December 1999 and continued until [his] transfer to the Transportation Administration in December 2001." Compl. at 2. He asserts that he was discriminated against on the basis of his gender and race when the FAA disciplined him after two female employees, one of whom was African American, made complaints about his conduct, but

6

did not discipline the two female employees.  *See id*.  Vargus seeks $7.5 million in compensatory damages and $300,000 in punitive damages.  *See id*.

Vargus attached numerous documents to his complaint, which, according to the Secretary, consist of over 300 pages.  He states, "In the . . . exhibits, I will present evidence on each of the issues, which will provide the prima facie evidence necessary for this District Court to render a finding which will reverse and prove beyond a reasonable doubt that the treatment of this respondent was unfair, racially, sexually and gender motivated, by managers who failed to follow the parameters of their own established regulations."  *Id*.  Amid this extensive collection of documents is a brief in support of the complaint, in which Vargus appears to more fully outline his claims.  *See* Compl. at Annex C (Brief).  Vargus alleges that, in December of 2000, he was reprimanded after being accused of using a racial epithet by an African American, female co-worker.  *See id*. at Annex C, p. 5-10.  Vargus asserts that the FAA discriminated against him on the basis of his race and gender by issuing a letter of reprimand.  *See id*.  He claims that this discriminatory animus is proven by the fact that no disciplinary action was taken against the co-worker, who also used the same racial epithet.  *See id*.  Additionally, Vargus reiterates the claim of gender discrimination that he raised in his August 2001 DOT

7

complaint regarding Ms. Porcello's complaints of inappropriate touching and harassment.  *See id*. at 10-15.

In September 2004, the Secretary, Whalens, and Connolly moved to dismiss Vargus's complaint.  *See* Notice of Motion dated September 21, 2004.  Subsequently, while the motion to dismiss was pending, the parties stipulated to the dismissal of Vargus's claims against Connolly and Whalens, *see* Stipulation and Order, and Vargus filed an amended complaint deleting Connolly and Whalens as defendants, *see* Amended Compl.  With the exception of the caption, the amended complaint is identical to the original complaint.  In July 2005, Vargus wrote to the Court explaining that he had been ordered to active duty in the United States Army and would be deployed to Iraq for one year.  *See* Letter dated December 26, 2004.  Vargus asked that this Court adjourn his case until his return.  *See id*.  The Court granted his request and denied the motion to dismiss without prejudice.  *See* July 13, 2005 Memorandum and Order.

On January 25, 2006, the Secretary renewed his motion seeking dismissal of Vargus's complaint under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Notice of Motion dated January 20, 2006.  First, the Secretary argues that Vargus's "rambling and incomprehensible" amended complaint fails to meet the minimum pleading requirements of Rule 8 as it fails to provide the Secretary with notice of the claims being made.

8

Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint at 5-7. The Secretary further asserts that Vargus's complaint should be dismissed for failure to state a claim because Vargus did not comply with the administrative exhaustion requirements, which resulted in the untimely filing of his complaint in this Court. *See id*. at 7-11.

In his response, Vargus argues that his complaint was timely because it was filed within 90 days of his receipt of the OFO's decision on his request for reconsideration. *See* Response Memorandum in Response to Defendant Motion to Dismiss the Amended Complaint at 2. He noted that, in its decision denying his request for reconsideration, the OFO notified him that he had 90 days in which to file a complaint in federal court. *See id*. He further argues that all of the exhibits attached to his complaint have been properly submitted as the evidence in the case. *See id*. at 3-4.

## Discussion

### Rule 8

The Federal Rules employ a liberal pleading standard that focuses on whether a party's complaint has provided notice to the opposing side, rather than on whether the plaintiff has pled all the facts underlying the alleged claim. *See Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1992); *Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d

9

Cir. 2002). Rule 8 states that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Second Circuit has explained that:

> The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial. The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.

*Salahuddin v. Cuomo*, 861 F.2d 40,42 (2d Cir. 1988)(internal citations omitted). Rule 8 further requires that each averment of the pleading "be simple, concise and direct." *See* Fed. R. Civ. P. 8(a)(2). These two requirements "taken together underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Secs. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)(internal citations omitted). *See also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

If a complaint fails to meet the requirements of Rule 8, the court has the power, on its own initiative or in response to a motion by the defendant, to dismiss the case. *See Salahuddin,* 861 F.2d at 42. Before dismissing the complaint, however, the court normally should grant the plaintiff leave to file an amended complaint that conforms to the Rule 8 requirements. *See Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995); *Salahuddin,*

861 F.2d at 42. This is especially true when a court is considering whether to dismiss with prejudice a *pro se* complaint alleging civil rights violations. *See Chance v. Armstrong,* 143 F.3d 698,701 (2d Cir. 1998); *Sleigh v. Charlex, Inc.*, No. 03 Civ. 1369, 2004 WL 2126742, at *1 (S.D.N.Y. Sept. 14, 2004).

Here, given Vargus's *pro se* status, leave to amend would normally be granted. However, because the Plaintiff's complaint can be dismissed on alternative grounds, amendment would be futile. Thus, the Court need not provide Vargus with an opportunity to amend his complaint. *See Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir.1999) (holding that "a district court may properly deny leave when amendment would be futile.").

**Rule 12(b)(6)**

When considering a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is required to accept the material facts alleged in the complaint as true, and not to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994) (citation and quotation omitted). "Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). For dismissals under Rule 12(b)(6), the task of

11

a court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Id*. As always, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.'" *Forsyth v. Fed'n Employment and Guidance Svc.*, 409 F.3d 565, 569 (2d Cir. 2005)(quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Here, while Vargus does not indicate under which statute he is bringing his claims, because he is asserting claims of gender, race, and age discrimination in employment, he appears to bring this action under Title VII and the ADEA. Before filing a Title VII or ADEA action in federal court, a plaintiff is required to timely exhaust his administrative remedies. *See Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001). In order to exhaust, an aggrieved employee must comply with the applicable regulations of the Equal Employment Opportunity Commission ("EEOC"). *See Jenkins v. Potter*, 271 F.Supp.2d 557, 562 (S.D.N.Y. 2003).

Regulations promulgated by the EEOC set forth the administrative procedures that federal employees must follow when making complaints of employment discrimination and retaliation prohibited by Title VII and the ADEA. *See* 29 C.F.R. § 1614.103(a). First, before filing a formal complaint, the

aggrieved employee must consult a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act. *See id*. at § 1614.105(a)(1). If the matter is not resolved through counseling, the aggrieved employee is required to file a formal written administrative complaint with the agency that allegedly discriminated against the employee within 15 days of receiving the EEO counselor's notice of the right to file a formal complaint. *See id*. at § 1614.106(a),(b). After the agency takes a final action on the complaint, the aggrieved employee may then appeal an unfavorable decision to the EEOC within 30 days of receipt of the agency's final decision. *See id*. at §§ 1614.401(a), 1614.402(a). On appeal, the OFO, on behalf of the EEOC, must issue a written decision. *See id*. at § 1614.405(a). Such a decision is considered final, unless the EEOC reconsiders the case. *See id*. at § 1614.405(b). Any request for reconsideration must be filed within 30 days of receipt of the OFO's decision. *See id*. Finally, where an aggrieved employee has appealed the agency's decision to the EEOC and there has been a final decision on appeal, if the aggrieved employee wishes to file a civil action in federal court, he must do so "[w]ithin 90 days of receipt of the [EEOC]'s final decision on an appeal." *Id*. at § 1614.407(c).

Here, the OFO rendered a final decision on Vargus's appeal from the DOT's decision on June 6, 2003. *See* Decl. of Melanie R.

Hallums at Ex. D. The decision included a Certificate of Mailing, which indicated that, for timeliness purposes, the EEOC would presume that Vargus received the decision within five days of the date of mailing, *i.e.*, by June 11, 2003. *See id*. at Ex. C, p. 6. Thus, the time period for Vargus to file an action in this Court expired on September 9, 2003 and the time period within which to seek reconsideration from the EEOC expired on July 11, 2003. Vargus did not file a request for reconsideration until February 5, 2004 and did not commence the instant action until May 21, 2004. *See id*. at Ex. E; Compl.

Because Vargus failed to comply with the applicable EEOC regulations, his complaint in this Court should be dismissed as time-barred. In *Harrison v. Potter*, 323 F.Supp.2d 593 (S.D.N.Y. 2004), a case factually similar to the one at bar, this Court reached the same conclusion. In that case, the plaintiff did not seek reconsideration of the OFO's decision on her appeal until 19 months after the filing deadline. *See id*. at 596-97. The OFO denied her request for failure to meet the EEOC filing deadline and, as in this case, the OFO noted that its decision on her appeal would remain the final decision. *See id*. at 597. Like Vargus, the plaintiff subsequently filed a complaint in this Court within 90 days of receipt of the OFO's decision on her request for reconsideration. *See id*. at 597 n.7. In dismissing her complaint, this Court found that the plaintiff "did not

14

adhere to the filing deadlines mandated by Title VII requirements, the EEOC regulations, and the OFO's decision" and, therefore, held that the only way that her action could survive was if the Court found a basis for equitable tolling.

Vargus cannot escape dismissal on timeliness grounds by asserting that the complaint was filed within 90 days of the OFO's decision on his request for reconsideration. "To hold otherwise would allow a plaintiff to circumvent the administrative procedures set up by Congress." *Jenkins*, 271 F.Supp.2d at 563. Moreover, Vargus's argument that his complaint should be deemed timely because the OFO's decision denying his request for reconsideration notified him that he had a right to file a civil action within 90 days is unavailing. By regulation, the EEOC is required to notify complainants of their right to file a civil action, "but this requirement does not serve to abrogate initial filing deadlines." *Id*. (quotation marks and citation omitted). Finally, Vargus has set forth no basis to warrant equitable tolling of the limitations period. Accordingly, this Court should grant the Secretary's motion and dismiss Vargus's complaint.

## **Conclusion**

For the foregoing reasons, it is respectfully recommended that your Honor grant the Secretary's motion and dismiss Vargus's complaint as untimely.

**<u>Notice</u>**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b), Fed. R. Civ .P., the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed. R. Civ. P., or a total of thirteen (13) working days, (*see* Rule 6(a), Fed. R. Civ. P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Charles L. Brieant, at the United States Courthouse, 300 Quarropas Street, Room 275, White Plains New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Brieant.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), cert. denied 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections must be made to Judge

Brieant and should not be made to the undersigned.

Date: March 6, 2006
White Plains, New York

                                              _____
                                              MARK D. FOX

                                              UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing report and recommendation have been sent to the following:

The Honorable Charles L. Brieant, U.S.D.J.

Richard A. Vargus
PSC #8-4430
8106 Condor St.
PSC Box 3500
MacDill AFB, Florida 33621

Melanie Robin Hallums
United States Attorney's Office
Southern District of New York
86 Chambers Street
Third Floor
New York, New York 10007